## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

**WINTER QUARTERS HUNTING &**              **CASE NO.  3:19-CV-00887**
**FISHING CLUB, LLC**

**VERSUS**                                              **JUDGE TERRY A. DOUGHTY**

**BOARD OF COMMISSIONERS, FIFTH**        **MAG. JUDGE PEREZ-MONTEZ**
**LOUISIANA LEVEE DISTRICT**

### RULING

Pending here is a Motion for Partial Summary Judgment filed by Plaintiff Winter Quarters Hunting and Fishing Club, LLC ("Winter Quarters") [Doc. No. 23].  Defendant Board of Commissioners, Fifth Louisiana Levee District (the "Levee Board") has filed an opposition [Doc. No. 27].  Winter Quarters has filed a reply to the opposition [Doc. No. 28].

For the following reasons, the pending Motion for Summary Judgment is GRANTED.

### I.      FACTS AND PROCEDURAL HISTORY

Winter Quarters owns approximately 8,000 acres in Tensas Parish, Louisiana.  In 2018, the Levee Board notified Winter Quarters that it had appropriated permanent servitudes on 136.17 acres of Winter Quarters' property and temporary access servitudes on an additional 7.216 acres. The Levee Board informed Winter Quarters that the lands thereby encumbered with permanent servitudes would be excavated and the soil would be removed, leaving Winter Quarters with borrow pits, permanently encumbered with a servitude, in place of its previously unencumbered hunting land. Although the construction work for which the property was appropriated has commenced, the Levee Board has not paid any compensation for the taking of Winter Quarters' property.

On July 11, 2019, Winter Quarters filed this lawsuit against the Levee Board under 42 U.S.C. § 1983, alleging the Levee Board took its property without authority and without payment of just compensation, in violation of the Fifth Amendment. Winter Quarters seeks damages and declaratory relief. [Doc. No. 1].

On August 13, 2020, Winter Quarters filed the pending motion seeking a declaratory judgment that the Levee Board is liable for payment of just compensation for its taking of any portion of Winter Quarters' property that was not riparian at the time of separation from the public domain (a.k.a. the time of "severance" or "separation from the sovereign," when the government first transferred title to the original private owners; hereinafter referred to as the "Time of Separation."). [Doc. No. 23].[1]   On September 24, 2020, the Levee Board filed an opposition to Winter Quarter's motion, in which it argues that it owes no compensation for taking any portion of Winter Quarters' property that is riparian now, regardless of whether it was riparian at the Time of Separation.  [Doc. No. 27].

The issues have been fully briefed, and the Court is prepared to rule.

## II.   LAW AND ANALYSIS

### A.   Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[1] Winter Quarters seeks only declaratory judgment regarding the Levee Board's legal liability for payment for non-riparian property. In order to render partial summary judgment regarding liability, this Court need not, at this juncture, resolve any potential factual disputes such as how many appropriated acres were non-riparian, or the measure and amount of just compensation that the Levee Board must pay.

"Summary judgment is always appropriate 'where the only issue before the court is a pure question of law.'" *J & L Family, L.L.C. v. BHP Billiton Petroleum Props. ( N.A.), L.P*, 293 F.Supp.3d 615, 619 (W.D. La. 2018), quoting "*Sheline v. Dun & Bradstreet Corp*., 948 F.2d 174, 176 (5th Cir. 1991)." The issue before the Court, a landowner's entitlement to compensation for property appropriated for levee purposes under Louisiana law (or the Fifth Amendment) "presents only a question of law." *South Lafourche Levee District v. Jarreau*, 16-788 (La. 3/31/17), 217 So.3d 298, 305, *cert. denied*, 138 S. Ct. 381, 199 L. Ed. 2d 279 (2017) (hereafter "*SLLD*").

Where the nonmovant will bear the burden of proof at trial, "[t]he moving party may meet its burden [on summary judgment] to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp*., 283 F.3d 254, 263 (5th Cir. 2002). If the nonmovant cannot "make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial, the entry of summary judgment is appropriate." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(B).

**B.      Analysis**

A property owner may bring a "takings" claim under § 1983 in federal court upon the taking of his property without just compensation by a local government. *Knick v. Township of Scott, Pennsylvania*, 139 S. Ct. 2162, 2167 (2019). Federal courts look to state law when determining if a private property interest has been taken without just compensation in violation of the Fifth Amendment. *Phillips v. Wash. Legal Found*., 524 U.S. 156, 164 (1998).

Lands fronting navigable rivers (in this case, the Mississippi River) have been burdened in Louisiana by a servitude under Civil Code Article 665 for the construction and maintenance of levees. Since 1978, Louisiana law has required payment of just compensation for property taken

3

for levee purposes. *See* Act 314 of 1978; *Tenneco Oil Co. v. Board of Com'rs for Lake Borgne Basin Levee Dist.*, 567 So.2d 113, 115-116 (La. App. 4th Cir. 1990)(on rehearing), writ denied, 569 So.2d 989 (La.1990) ("Although the riparian landowner still owes the legal servitude of Civil Code Article 665, the public (i.e. state, levee board) can no longer exercise that servitude without payment of just compensation.); *see also Vela v. Plaquemines Parish Government*, 2000-2221 (La. App. 4 Cir. 3/13/02), 811 So.2d 1263, 1273 (same); LA. REV. STAT. 38:301.

There is one exception to the requirement of payment of just compensation for property taken for levee purposes. Under Louisiana law, "batture" is the only type of property that may be taken for levee purposes, without compensation. *See* LA. CONST. art. VI, § 42(A); LA. REV. STAT. 38:301(C)(2)(a) (Levee districts must pay for "[a]ll lands, exclusive of batture, and improvements hereafter actually taken, used, damaged, or destroyed for levee or levee drainage purposes... at fair market value to the full extent of the loss.").

The parties disagree as to whether Winter Quarters is entitled to compensation.

### 1.      Winter Quarters' Contentions

Winter Quarters contends that the batture exemption applies only to property that was riparian at the Time of Separation. This is because the only Louisiana law defining batture is found at LA. REV. STAT. 38:281(1), which provides: "'Batture' shall have the same meaning as that term was defined by the courts of this state as of the effective date of the [1974] Constitution of Louisiana." As of 1974 (and currently), according to Winter Quarters, the jurisprudence defined batture as property that was riparian—i.e. immediately adjacent to a navigable waterway (here, the Mississippi River)—at the Time of Separation from the public domain. If the taken property was not riparian at the Time of Separation, then, by definition, it cannot be "batture." If the property is

4

not batture, then under both the Fifth Amendment and Louisiana law, the Levee Board must pay just compensation for its taking of the Property.

In support of its arguments, Winter Quarters states that, in *DeSambourg v. Board of Com'rs for Grand Prairie Levee Dist.*, 621 So.2d 602, 607 (La. 1993), *cert. denied*, 510 U.S. 1093 (1994), the Louisiana Supreme Court grappled with defining the scope of the batture exemption from compensation. The Court filled in the gaps in the Louisiana Legislature's definition of batture, which stated that "'Batture' shall have the same meaning as that term was defined by the courts of this state as of the effective date of the [1974] Constitution of Louisiana." *Id*. at 609, quoting La. R.S. 38:281(1).

Winter Quarters further states, that, after tracing the history of the riparian servitude and reaffirming its applicability only to "those lands that were riparian when separated from the public domain," the Louisiana Supreme Court in *DeSambourg* defined batture as "alluvion" that "is formed successively and imperceptibly by alluvial accretions (sedimentation)." *Id*. at 607, 609. Batture is, by definition riparian, because "[t]itle to alluvion is purely an accessory right, attaching exclusively to riparian ownership, and incapable of existing without it." *Id*.; *see also Gravolet v. Board of Com'rs for Grand Prairie Levee Dist.*, 598 So.2d 1231, 1236 (La. App. 4th Cir. 1992), ("[B]atture land must also be riparian land subject to the riparian servitude."). Where, as here, a levee district takes land to build borrow pits on lands that were not riparian at the Time of Separation, "the issue of whether or not the location of the borrow pits was on batture land is moot..." *Id*.

Winter Quarters further assets that an uncompensated taking of property that was not riparian at the Time of Separation violates the constitutional right to just compensation. *Delaune v. Board of Com'rs for Pontchartrain Levee Dist.,* 87 So.2d 749, 230 La. 117 (La. 1956) (Because

non-riparian property is not encumbered with a historic levee servitude, taking non-riparian property for levee use without payment of compensation "would be violative of the Federal Constitution...."); *Grayson v. Commissioners of Bossier Levee Dist.*, 229 So.2d 139, 144 (La. App. 2d Cir. 11/18/69) (The Louisiana Constitution prohibits the taking of non-riparian property without the payment of just compensation.). Unlike riparian titleholders, whose land has been encumbered since the Time of Separation, the original titleholders of non-riparian land acquired unencumbered title. The taking of a servitude on non-riparian property is the taking of a new property interest for which just compensation must be paid.

"It is not the present ownership of the land that determines its riparian character, but its situation at the time when it was first separated from the sovereign. The fact that a man may own land on the river does not make all the land he owns riparian in nature." *Id*. at 142.

Winter Quarters asserts that, if the property was not riparian at the time of separation from the public domain, it is not subject to a historic riparian levee servitude, even if the property was riparian at the time of the taking. *See, e.g. Deltic Farm & Timber Co., Inc. v. Board of Com'rs for Fifth Louisiana Levee District*, 368 So.2d 1109 (La. App. 2nd Cir. 1979) (the levee district was required to pay the landowners "full compensation for its damages caused by the Levee Board's use of their property" at the Time of Separation "even though it may be riparian at the time of taking due to changes in the course of the navigable stream due to natural causes."); *see also Pillow v. Board of Com'rs,* 425 So.2d 1267 (La. App. 2d Cir.1982), writ denied, 445 So.2d 1225 (La.1984). (finding that full compensation was owed for land that was not riparian and finding that none of the land was batture.).

Winter Quarters relies heavily on *Deltic Farm & Timber Co., supra*, where the court explained the Fifth Levee District's error in paying less than full just compensation for

appropriated property that was not riparian at the Time of Separation on grounds that it was riparian
at the time of the appropriation:

> The Levee Board contends that the property is subject to the
> servitude because it is presently riparian, that is, it fronts on the
> Mississippi River. The landowners contend the property is not
> subject to the servitude because it was not riparian at the time the
> property was severed from the public domain and because the
> existence of the servitude depends on the riparian nature of the
> property at the time of severance.

368 So.2d at 1111. The court found that the appropriated property now fronted on the Mississippi
River because the river had changed course over time, eroding away the property that originally
fronted on the river. *Id.* At the time this case was decided, levee districts were required to pay only
the tax-assessed value of the property for the preceding year for property that was riparian at the
Time of Separation. If, however, the appropriated property was not riparian at the Time of
Separation, the levee districts owed full just compensation. Because the appropriated property had
not been burdened with a riparian servitude at the Time of Separation, the court held that payment
of anything less than just compensation would violate both the Louisiana and Federal
Constitutions, explaining:

> Our view is that to impose the levee servitude and appropriation
> without compensation on property that was not riparian and subject
> to the levee servitude at time of severance would constitute the
> taking of private property without due compensation in violation of
> both the Louisiana and Federal Constitutions. We find nothing in the
> history of the servitude, as disclosed by the cited cases and articles,
> which indicates the servitude was reserved beyond the limits of
> riparian concessions. *Delaune[v. Board of Com'rs for*
> *Pontchartrain Levee Dist.,* 87 So.2d 749, 230 La. 117 (La. 1956)]
> specifically recognizes that a state statutory or constitutional
> provision "does not and could not for obvious constitutional reasons,
> burden land already separated from the public domain with a
> servitude."
>
> The language in the cited decisions on which the Levee Board relies
> does not mean, as the Levee Board contends, that the levee servitude

exists not only on lands riparian at the time of severance but also exists on lands riparian at the time of taking. That was essentially the holdings of *Wolfe* and *Franklin* which have been effectively overruled. What we understand the court to have meant in those cases, in which it was dealing with land not riparian at the time of taking, was that even though the land did not presently front on a navigable stream, it would nevertheless be subject to the levee servitude if it was riparian at time of severance.

The importance to the public safety and welfare of the levee system and of changes in the levee system as the course of the river changes cannot be denied or underestimated. However, taking of private property without due compensation cannot be constitutionally justified under the police power of the state alone. *Eldridge v. Trezevant* so held.

We hold, as did the trial court, that property which was not riparian at the time of severance is not encumbered by the Article 665 levee servitude and is not subject to appropriation for levee purposes, even though it may be riparian at the time of taking due to changes in the course of the navigable stream due to natural causes.

*Deltic Farm & Timber Co.,* 368 So.2d at 1112-1113.

### 2.      The Levee Board's Contentions

The Levee Board frames the issue in dispute as being whether the property had to be riparian when separated from the public domain to be subject to the riparian servitude of Civil Code Article 665, or whether it suffices that the property is presently riparian.  The Levee Board contends that the language of  Civil Code Article 665 and the history of Louisiana jurisprudence demonstrate that the riparian servitude applies to all property that adjoins a navigable river, as well as property that was riparian at the Time of Separation, even though removed from the river at the time of taking.  Thus, according to the Levee Board, *Deltic Farm & Timber Co*., was wrongly decided.

The Levee Board argues that the Louisiana Supreme Court cases establish that the Time of Separation is considered only when the property does not presently adjoin a navigable river. The

better reading of *Delaune,* according to the Levee Board, is that property that is currently adjacent to a navigable stream is always subject to the servitude, but that the Time of Separation test must be applied to determine whether property that is not currently adjacent to a navigable stream is riparian and subject to the servitude.

The Levee Board further argues that the language of Civil Code Article 665 and related articles apply riparian obligations to all lands bordering a navigable river, not just those bordering at the Time of Separation.  The text of Civil Code Article 665 does not support the idea that the riparian servitude is imposed only on those lands that were adjoining navigable rivers when separated from the public domain.  Rather, the text of this article and the other code article on point demonstrates that the riparian servitude is a limitation on ownership established by virtue of the fact of being a riparian property.  There is no hint in the text of these laws that they are tied only to properties that bordered navigable rivers at some particular time.  By its express terms, article 665 applies to "the adjacent proprietors on the shores of navigable rivers."

The Levee Board contends, additionally, that the Civil Code was written in contemplation of the fact that rivers move.  Thus, there are specific provisions dealing with additional land formed by alluvion.  LA. CIV. CODE arts. 499 and 501.  Other provisions deal with property carried away by the sudden action of a river and with the ownership of an abandoned riverbed when a river changes course.  LA. CIV. CODE arts. 502 and 504.  It therefore was apparent that property that did not start out adjacent to a river could later become riparian with the movement of the river.

The Levee Board additionally asserts that policy considerations weigh against making Time of Separation the test for a riparian servitude in every case.  If any change in the course of a river does not subject the property to the riparian servitude, the result will be that as one travels the course of the river, some properties along the banks will be subject to the servitude, and others

will not.  For rivers that have abandoned the old bed and changed course substantially, it would be possible that none of the property along the river is subject to the riparian servitude, an approach which is inconsistent with Civil Code Article 456, which preserves the banks of navigable streams for public use.   Confidence in the law would be eroded as time goes on and land along the rivers become exempt from the riparian servitude as the rivers change course, resulting in some landowners being subjected to the servitude, while their neighbors are not.

The Levee Board further argues that the cases cited by Winter Quarters are distinguishable or should not be followed.  Specifically, the Levee Board acknowledges that *Deltic Farm* directly addresses the issue of whether property that was not riparian at the Time of Separation but had since become riparian by the movement of the river, was subject to the riparian servitude. However, the Levee Board asserts that *Deltic Farm* should not be followed, as it "stands alone" in holding that presently riparian property is not subject to the riparian servitude if it was not riparian at the Time of Separation.

### 3.      Winter Quarter's Reply

Winter Quarters replies that the Levee Board has mischaracterized the issue, which is whether or not Louisiana's batture exemption applies to property that was not riparian at the time of separation from the public domain.  The Levee Board erroneously frames the issue as "whether the property had to be riparian when separated from the public domain to be subject to the riparian servitude of Civil Code article 665, or whether it suffices that the property is presently riparian." [Doc. No. 27, p. 1]. The Levee Board's argument conflates property "subject to the riparian servitude of Civil Code Article 665," for which compensation must be paid, with "batture," which is exempt from payment under Louisiana law. Under current law, the Levee Board must pay just compensation for all property taken for levee purposes, even if it is already legally encumbered by

10

a Civil Code Article 665 servitude, and even if it is riparian now. *See* LA. REV. STAT. 38:301; LA. REV. STAT. 38:351, *et seq*.; LA. CONST. art. VI, § 42. Thus, whether or not Winter Quarters' property is subject to the Civil. Code Article 665 servitude is irrelevant to the issue of payment of just compensation.

Instead, the legal issue for this Court's determination is whether or not property that was not riparian at the Time of Separation meets the legal definition of "batture."  Winter Quarters asserts the answer is "no."

Winter Quarters further contends that the definition of batture has not been expanded to include property that was not riparian at the Time of Separation and has not changed since the effective date of the Louisiana Constitution of 1974. The definition of batture historically employed by the courts is that batture is alluvial accretion to land that was riparian at the Time of Separation. Clearly, by retaining the historical definition of batture in La R.S. 38:281(1), the Legislature intended to protect property ownership by preventing levee districts and courts from enlarging the definition of batture, as the Levee Board urges this Court to do, to permit levee districts to take additional, privately-owned land without paying for it.

Winter Quarters also asserts that nothing in the 2006 amendments, including the amendment to Civ. Code art. 665, altered the definition of batture or permits the Levee Board to avoid payment for property that was not riparian at the Time of Separation.

Winter Quarters further asserts that, although the Levee Board argues that the cases cited by Winter Quarters are distinguishable or wrongly decided, the Levee Board does not cite a single case in which the batture exemption was applied to permit a levee district to take property that was non-riparian at the Time of Separation without paying for it. Nor has the Levee Board cited any case that even intimates that the taking of such non-riparian property, without payment of just

compensation, could pass constitutional muster. Instead, the Levee Board suggests that Winter Quarters' cited jurisprudence, directly contrary to the Levee Board's legal position, simply "should not be followed" by this Court, [Doc. No. 27, pp. 21, 24], without offering any compelling reason why.

Winter Quarters refutes the Levee Board's policy arguments by stating that under Louisiana law, the Levee Board has the power to appropriate and expropriate a permanent levee servitude over any property needed for levee purposes, regardless of its riparian or non-riparian status, at any time. *See* LA. REV. STAT. 38:301; LA. REV. STAT. 38:351et seq. Indeed, the Levee Board has the explicit power to expropriate (rather than appropriate) "both riparian and non-riparian property" for levee purposes. LA. REV. STAT. 38:351. However, whether the levee servitude is appropriated or expropriated, and whether the property is riparian or non-riparian, the Levee Board must pay just compensation for it. LA. REV. STAT. 38:301; LA. REV. STAT. 38:358.

Finally, Winter Quarters asserts that Louisiana laws ensure that funding the payment of just compensation is not a problem. To ensure levee districts' payment for the taking of private property for permanent levee servitudes or for other levee purposes, the Louisiana Constitution authorizes levee districts to levy taxes, thus ensuring that the levee system remains intact and continuous. LA. CONST. art. VI, § 42(A).

### 4. Discussion

The Court finds that Winter Quarters is entitled to summary judgment in its favor, regardless of how the issue is framed. To avoid payment of compensation for the taking of Winter Quarters' property, the Levee Board bears the burden of proving some exemption from paying otherwise required compensation for private property taken for use as borrow pits. *See, e.g., Gravolet, supra,* (affirming the trial court's grant of partial summary judgment, finding just

compensation was owed for the levee district's taking of property for excavation of borrow pits). Where a levee district invokes the batture exemption, it bears the burden of proving that the property is batture. *Tenneco Oil Co.,* 567 So.2d at 119 (the levee district bears "the burden of proving that the servitude taken is in fact batture," in order to claim the exemption from compensation); *Taylor v. Board of Levee Com'rs of Tensas Basin Levee Dist*., 332 So.2d 495 (La. App. 3d Cir. 1976) (the "appropriating body bears the burden of proving the riparian character of the land," i.e. that it "fronted on a navigable river when the tract was first separated from the sovereign").

Under Louisiana law, "batture" is the only type of property that may be taken without compensation for levee purposes. However, the batture exemption is strictly construed. *Kimble v. Board of Com'rs*, 598 So.2d 1251, 1253 (La. App. 4 Cir. 1992) ("Plaintiff whose property is being taken is entitled to a strict construction of the law which encumbers his ownership of the batture," concluding that the batture exemption was inapplicable).

Historically, just compensation was not required for appropriation of levee servitudes over lands that were riparian at the Time of Separation because riparian titles were already burdened with the servitude.  As the Louisiana Supreme Court explained in *SLLD*:

> Prior to the Louisiana Purchase, the sovereign governments of France and Spain included in their land grants both reservations of public servitudes over riparian land and onerous levee obligations requiring such owners to build levees and keep them in repair at their own expense under penalty of forfeiture.

*SLLD*, 217 So.3d at 308. In the mid-19th century, Louisiana levee districts were formed, and the levee districts took over the responsibility for the construction and maintaining of levees. *SLLD*, 217 So.3d at 308. "Despite the shift in responsibility, riparian land remained burdened by a levee servitude." *Id*. The "historic purpose of the [levee] servitude" was the "making and repairing of

the levee immediately riparian to the navigable river or stream to prevent flooding from that river or stream." *Gravolet,* 598 So.2d at 1234 (citations omitted). The servitude also encompassed batture, alluvial accretions attaching to that riparian property. *See, e.g., Pruyn v. Nelson Bros*., 180 La. 760, 157 So. 585, 587 (1934) ("The batture as well as the riparian property along the Mississippi river is subject to a servitude for the building and repairing of levees....").

The historic riparian levee servitude was preserved in the Louisiana Civil Code, applying to "those lands that were riparian when separated from the public domain, and when the levee is necessary for the control of flood waters from the river to which the land taken is riparian." *DeSambourg*, 621 So.2d at 607. In recognition of the fact that the original riparian titles were already burdened with the levee servitude, Louisiana law permitted the levee districts to "appropriate" property simply by passing a resolution announcing their intention to exercise the servitude they already possessed. *SLLD*, 217 So.3d at 305 ("Appropriation, as opposed to expropriation, is carried out by a resolution of the appropriating authority, without the need for a judicial proceeding."). Appropriation of the existing riparian servitude without payment did not run afoul of the constitutional right to just compensation because it did not constitute a "taking" of a new property interest:

> Appropriation is the exercise of a pre-existing but previously unexercised public right (the levee servitude in the instant case) to property, whereas expropriation is the effort to acquire new public rights to property possessed by a private owner. Riparian lands, i.e., lands fronting on rivers and streams, have been burdened with a public servitude for levees ever since the land was first separated from the public domain. Consequently, when the public exercises its levee servitude on riparian land, there is no "taking" within the meaning of the Fifth Amendment of the Constitution of the United States (made applicable to the states by the Fourteenth Amendment) and Article I, Section 4 of the 1974 Constitution of Louisiana, for which "just compensation" must be paid.

*Vela v. Plaquemines Parish Government*, (La. App. 4 Cir. 3/10/99), 729 So.2d 178, 181, citing *DeSambourg*, 621 So.2d at 606-607; *see also Deltic Farm & Timber Co.*, 368 So.2d at 1111 ("The rationale of decisions upholding the constitutionality of appropriation for levee purposes is that the levee servitude was reserved to the public at the time riparian property was severed from the public domain and that title to such riparian property is held subject to the servitude.").

In the Louisiana Constitution of 1921, the Louisiana Legislature first recognized that compensation was owed statewide for appropriations of riparian property with the exception of batture; however, that amount was limited to the tax-assessed value of the property for the preceding year. *SLLD*, 217 So.3d at 308-309.

The Louisiana Constitution of 1974 opened the door to providing just compensation for the taking of property that was riparian, significantly increasing the measure of compensation existing at that time "to providing for payment of 'fair market value to the full extent of the loss' for the actual taking of improvements and all lands, excluding batture." *SLLD*, 217 So.3d at 309, citing LA. REV. STAT. 38:301, as amended by Acts 1985, No. 785; *see also* Acts 1978, No. 314 and Acts 1979, No. 676. By Act 314 of 1978, the Legislature "did not merely prescribe a method for enforcing a substantive right; it created and defined a new substantive right in favor" of riparian landowners whose property was taken for levee purposes. *Terrebonne v. South Lafourche Tidal Control Levee Dist.*, 445 So.2d 1221, 1224 (La. 1984). Under Louisiana law, "[t]he right to compensation measured at fair market value became a vested right on the effective date of the Act" in 1978. *Terrebonne*, 445 So.2d at 1224.

Thus, since 1978, Louisiana law has required payment of just compensation for property taken for levee purposes—whether or not the property is or was riparian. *See* Act 314 of 1978; *Tenneco Oil Co.*, 567 So.2d at 115-116 ("Although the riparian landowner still owes the legal

servitude of Civil Code Article 665, the public (i.e. state, levee board) can no longer exercise that servitude without payment of just compensation.)); *see also Vela,* 811 So.2d at 1273 (same); *SLLD, supra*; LA. REV. STAT. 38:301.

Under current Louisiana law, levee districts must pay for "[a]ll lands, exclusive of batture, and improvements hereafter actually taken, used, damaged, or destroyed for levee or levee drainage purposes... at fair market value to the full extent of the loss." LA. REV. STAT. 38:301(C)(1)(a). Citing these provisions, in *SLLD*, the Louisiana Supreme Court traced the history of Louisiana law regarding the riparian levee servitude and confirmed that:

> [F]or land taken by way of a permanent levee servitude... compensation is fair market value of the property taken or destroyed before the proposed use. See La. R.S. 38:301(C)(1)(h). The compensation for a permanent levee servitude applies to all lands, exclusive of batture, and improvements appropriated, taken, used, damaged, or destroyed for levee purposes. See LA. REV. STAT. 38:301(C)(1)(i).

*SLLD*, 217 So.3d at 307.

As indicated above the only exception to the requirement of compensation is the batture exemption. *See* LA. REV. STAT. 38:301: LA. CONST. Art. I, Section IV(G). However, the batture exemption is strictly construed. *Kimble v. Board of Com'rs*, 598 So.2d 1251, 1253 (La. App. 4 Cir. 1992) ("Plaintiff whose property is being taken is entitled to a strict construction of the law which encumbers his ownership of the batture," concluding that the batture exemption was inapplicable).

The Louisiana Supreme Court in *DeSambourg* defined batture as "alluvion" that "is formed successively and imperceptibly by alluvial accretions (sedimentation)." *See DeSambourg,* 611 So. 2d at 607, 609. Batture is, by definition riparian, because "[t]itle to alluvion is purely an accessory right, attaching exclusively to riparian ownership, and incapable of existing without it." *Id*. at 607,

16

609; *see also Gravolet*, 598 So.2d at 1236 ("[B]atture land must also be riparian land subject to the riparian servitude.").

Therefore, Winter Quarters is entitled to summary judgment that the Levee Board is liable for payment of just compensation for its taking of any portion of Winter Quarters' property that was not riparian at the time of separation from the public domain, for the reason that Louisiana's batture exemption is very narrowly tailored and does not apply to property that was not riparian at the Time of Separation.

Additionally, to the extent the Levee Board argues that Winter Quarters is not entitled to summary judgment on the basis that the riparian servitude applies to all property that adjoins a navigable river, regardless of whether it was riparian at the Time of Separation, the Court finds that contention to be of little relevance to Winter Quarters' motion. Under current law, the Levee Board must pay just compensation for all property taken for levee purposes, even if it is already legally encumbered by a Civil Code Article 665 servitude, and even if it is riparian now. *See* LA. REV. STAT. 38:301; LA. REV. STAT. 38:351 *et seq.;* LA. CONST. art. VI, § 42.  The only exception is for batture.

Furthermore, the Court agrees with Winter Quarters that *Deltic Land &Timber, supra* has resolved that issue against the Levee Board.  Persuasive authority for the Court's conclusion is found in the following commentary from Professors A.N. Yiannopoulos and Professor Ronald J. Scalise, Jr., *Louisiana Civil Law Treatise, Predial Servitudes*, §11.15, (4th Edition):

> Lands fronting navigable rivers have been burdened in Louisiana, apart from the servitude of public use under Article 456 of the Civil Code, by the servitude under Article 665 of the Civil Code for the construction and maintenance of levees. The constitutionality of Article 665 has been questioned, but repeatedly affirmed. *See Board of Com'rs for Pontchartrain Levee Dist. v. Baron,* 236 La. 846, 109 So. 2d 441 (1959); *see also General Box Co. v. U.S.*, 351 U.S. 159, 76 S. Ct. 728, 100 L. Ed. 1055 (1956). This article

17

applies "only to navigable rivers or streams. Lakes are not included."

[FN 4: *Delaune v. Board of Com'rs for Pontchartrain Levee Dist.,* 230 La. 117, 125, 87 So. 2d 749, 752 (1956).]

The burden for the construction and maintenance of levees affects lands that were part of a riparian tract at the time of severance from the sovereign, even if they are not riparian at the time of the appropriation.[5]

[FN 5: *See* DeSambourg v. Board of Com'rs for Grand Prairie Levee Dist., 621 So. 2d 602, 607 (La. 1993); *Jeanerette Lumber & Shingle Co. v. Board of Com'rs for Atchafalaya Basin Levee Dist.,* 249 La. 508, 187 So. 2d 715, 719 (1966): "[I]t must be shown that such property was of riparian origin."; *see also* Lovett, Batture, Ordinary High Water, and the Louisiana Levee Servitude, 69 Tul. L. Rev. 561 (1994). The public servitude does not extend to property that was not part of a riparian tract at the time of severance from the sovereign and is not riparian at the time of the taking. *See Taylor v. Board of Levee Com'rs of Tensas Basin Levee Dist.,* 332 So. 2d 495 (La. Ct. App. 3d Cir. 1976).]

 *In the past, the converse was also true. Lands that were not a part of a riparian tract at the time of severance from the sovereign but were riparian at the time of the appropriation were burdened by the levee servitude.[6]*

[FN 6:  In Ruch v. City of New Orleans, 9 So. 473, 475 (La. 1891), the court declared that when a navigable water reaches the land of a proprietor, "he becomes subject to all the legal servitudes imposed upon those who were originally riparian owners; and … lands thus brought under such servitudes must, like the land of which they form a part, be yielded up without compensation." See also Bass v. State, 1882 WL 8622 (La. 1882). In Burdin v. Board of Com'rs for Atchafalaya Basin Levee Dist., 533 So. 2d 977 (La. Ct. App. 3d Cir. 1988), the court held that under the 1936 Louisiana jurisprudence a tract of land could be appropriated for levee construction, even if it was not riparian at the time of severance from the public domain; it sufficed that it was riparian at the time of the appropriation.]

*However, beginning with Delaune v. Board of Commissioners, , 230 La. 117, 87 So. 2d 749 (1956), the Louisiana Supreme Court, in a series of decisions, adopted a more restrictive view and "effectively overruled" the prior jurisprudence. As a result, lands that were not part of a riparian tract at the time of severance from*

> *the sovereign, but were riparian at the time of the taking, were not burdened by the levee servitude.[9]*
>
> *[FN9:See Deltic Farm and Timber Co., Inc. v. Board of Com'rs f or Fifth Louisiana Levee Dist., 368 So. 2d 1109, 1111 (La. Ct. Ap p. 2d Cir. 1979). The court declared that to impose the levee servitude on property that was not riparian at the time of severance would be a taking of private property without due compensation in violation of both the Louisiana and Federal Constitutions. (368 So. 2d at 1112). See also Delaune v. City of Kenner, 550 So. 2d 1386 (La. Ct. App. 5th Cir. 1989).]*
>
> Such lands could be expropriated for levee construction but could not be appropriated under Article 665 of the Louisiana Civil Code.

*Id. (emphasis added)*

Accordingly, for the above reasons, Winter Quarters is entitled to summary judgment that the Levee Board is liable for payment of just compensation for its taking of any portion of Winter Quarters' property that was not riparian at the Time of Separation

## III.   CONCLUSION

For the reasons set forth above, the Motion for Partial Summary Judgment filed by Plaintiff Winter Quarters Hunting and Fishing Club, LLC ("Winter Quarters") [Doc. No. 23] is GRANTED.

MONROE, LOUISIANA, this 6th day of November, 2020.

**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**